664 S.E.2d 531

William L. GROVES and Harrolyn
B. Groves, husband and wife,
Plaintiffs Below, Appellees,

v.

ROY G. HILDRETH AND SON, INC.; Roy
G. Hildreth, Jr., individually; Nitro En-
ergy, Inc., GMH Gas Co., Inc.; Thomas
C. Evans, III, individually; and Boggs
Natural Gas, FLP, Defendants Below.

Nitro Energy, Inc., Appellant.

No. 33528.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 26, 2008.

Decided June 3, 2008.

Harrolyn B. Groves, Spencer, Pro se.

William L. Groves, Spencer, Pro se.

Larry L. Skeen, Esq., Skeen & Skeen, Charleston, for Appellant Nitro Energy, Inc.

PER CURIAM:

The appellant, one of the defendants below, Nitro Energy, Inc. ("Nitro"), appeals from an order denying Nitro's motion to set aside a default judgment. The trial court entered a default judgment as to liability against Nitro, and several months later entered a final default judgment for damages against Nitro in the amount of $704,000.00. Subsequently, Nitro filed a motion to set aside the default judgment under Rule 60(b) of the *West Virginia Rules of Civil Procedure.* The trial court denied the motion on February 20, 2007.

For the reasons stated, *infra,* we reverse and remand this matter to the trial court for further proceedings.

## I.

On September 1, 2005, the appellees, William L. Groves and Harrolyn B. Groves ("the Groves"), filed a *pro se* complaint against Nitro, *et al.*[1] The Groves are owners of real estate in Roane County. The Groves claim that they are entitled to certain mineral rights underlying their real estate, as well as mineral rights under certain adjoining property. The complaint asserts claims of (1) ejectment, (2) conversion, and (3) quiet title. The Groves' request for relief included a request for damages in conjunction with the conversion cause of action. The conversion claim was based on the assertion that various defendants had converted the Groves' "right to lease their property to others."[2]

---

1. The defendants named in the original complaint are as follows: Roy G. Hildreth and Son, Inc.; Roy G. Hildreth, Jr., individually; Nitro Energy, Inc.; BNG Producing and Drilling, Inc.; B & R Construction, Inc.; Westside Exploration, LLC; GMH Gas Co., Inc.; and Boggs Natural Gas, FLP.

2. The complaint asserts, in part, that Roy G. Hildreth and Son, Inc. leased certain oil and gas interests which are in dispute in this case to Nitro Energy, Inc., which in turn were assigned to Westside Exploration, LLC. The complaint also asserts that "... Hildreth deeded title to the 'oil, gas and other minerals ...,'" to GMH Gas

On September 23, 2005, Roy G. Hildreth and Son, Inc., Roy G. Hildreth, Jr., GMH Gas Co., Inc. and Boggs Natural Gas, FLP filed a *West Virginia Rules of Civil Procedure*, Rule 12(b)(6) motion to dismiss. The motion disputes the Groves' claim to ownership in the oil, gas and other minerals. The motion was based, in part, on language in the Groves' deed which was attached to the complaint and on the recorded instruments relating to the original severance of minerals in a 1913 deed. The deed to Groves' real estate contains the following language: "There is further excepted and reserved from the operation of this conveyance all of the oil gas, and other minerals within and underlying the same."

On October 6, 2005, BNG Producing and Drilling, Inc. ("BNG") and B & R Construction, Inc. ("B & R"), also filed a joint motion to dismiss. B & R's motion was based upon an anticipated "release" of the lease which Nitro had assigned to Westside Exploration, LLC. On October 21, 2005, Westside executed a "SURRENDER AND RELEASE OF OIL AND GAS LEASES" to the Groves, and, thereafter BNG and B & R were no longer involved in the litigation.

On October 17, 2005, as a result of Nitro's failure to respond to the complaint, the Groves filed a verified motion for default judgment. The motion was served on Nitro by mail.

On October 19, 2005, the trial court issued a letter opinion granting a Rule 12(b)(6) motion to dismiss on favor of Roy G. Hildreth and Son, Inc., Roy G. Hildreth, Jr., GMH Gas Co., Inc. and Boggs Natural Gas, FLP. The court directed an order to be prepared dismissing these parties; however, before the order was entered, on November 23, 2005, the court signed an "ORDER GRANTING PLAINTIFFS LEAVE TO AMEND THE PLEADINGS AND STAYING THE

---

COURT'S LETTER DECISION ON THE DEFENDANTS' MOTION TO DISMISS."

On December 8, 2005, the Groves filed an "Amended/Supplemented Complaint."[3] The record indicates that service of the Amended/Supplemented Complaint was served on all named defendants except Nitro. And, all defendants, except Nitro, filed a response to the Amended/Supplemented Complaint.

On January 3, 2006, the Groves filed a notice of hearing on the default judgment motion against Nitro. Notice was served on Nitro by mail.

On March 16, 2006, the trial court, without a hearing, entered an order granting the Groves a default judgment "as to liability in this matter." The judge's order states:

This matter came before the Court on the Plaintiffs' Motion for Default Judgment against Defendant Nitro Energy, Inc. Having reviewed the Plaintiffs' Motion, the entire record of this case, and pertinent legal authorities, the Court is of the Opinion to and does hereby GRANT the Plaintiffs' Motion for Default Judgment as to liability against Defendant Nitro Energy, Inc. for the following reasons:

Rule 55 of the West Virginia Rules of Civil Procedure provides for default judgment to be entered by the court where it appears that a party has failed to plead or otherwise defend a complaint as provided by the Rules of Civil Procedure. In the instant case, it appears to the Court that the Defendant Nitro Energy, Inc. has failed to appear, answer, plead, or otherwise defend the complaint. Additionally, the Court notes that the Defendant Nitro Energy, Inc. has been properly served with the Complaint in this matter, yet has still failed to respond thereto. Therefore, the Court is of the opinion that entry of

---

Co., Inc., which, in turn, leased the interests to Boggs Natural Gas, FLP "... for all formations to a basement of 17,000 feet below the surface."

**3.** The Amended/Supplemented Complaint identifies the following defendants in the Civil Case Information Statement: Roy G. Hildreth and Son, Inc., Roy G. Hildreth, Jr., GMH Gas Co., Inc., Boggs Natural Gas, FLP, and Thomas C. Evans. While Nitro Energy, Inc. was not named

in the Civil Case Information Statement, Nitro Energy, Inc., was retained in the list of named defendants in the Amended/Supplemented Complaint.

BNG Producing and Drilling, Inc., B & R Construction, Inc. and Westside Exploration, LLC, were not named as defendants in the Amended/Supplemented Complaint.

default judgment against Defendant Nitro Energy, Inc. is appropriate.

### Ruling

For the above mentioned reasons, the Court hereby GRANTS the Plaintiffs' Motion for Default Judgment against Defendant Nitro Energy, Inc.

It is hereby ORDERED that default judgment be entered against Defendant Nitro Energy, Inc. as to liability in this matter.

. . .

On June 7, 2006, the Groves joined in a motion to dismiss Boggs Natural Gas, FLP as a defendant. The trial court approved the dismissal in a September 23, 2006 order.

On July 20, 2006, Roy G. Hildreth & Son, Inc., Roy G. Hildreth, Jr. and GMH Gas Co., Inc. filed a motion for summary judgment with respect to the amended/supplemented complaint.

On July 27, 2006, the Groves filed a notice for a hearing on damages in connection with the March 16, 2006 default judgment against Nitro. The certificate of service does not indicate that Nitro was served with this notice of hearing. On August 22, 2006, the trial court conducted an evidentiary hearing on the issue of damages, and at the conclusion of the hearing, the trial court orally granted judgment. On September 2, 2006, the trial court entered an order granting final judgment against Nitro Energy, Inc. for $704,000.00.[4]

On October 10, 2006, after the entry of the $704,000.00 default judgment against Nitro, the trial court conducted a hearing on the summary judgment motion of defendants Roy G. Hildreth & Son, Inc., Roy G. Hildreth, Jr. and GMH Gas Co., Inc., and orally granted defendants' motion; however, no written order was entered at that time.

On October 17, 2006, the trial court entered an order permitting the Groves to withdraw some of the claims against Roy G. Hildreth & Son, Inc., Roy G. Hildreth, Jr. and GMH Gas Co., Inc. The order recites that " . . . Plaintiffs' [Groves'] conversion claim was satisfied by Plaintiffs' [Groves'] recovery against defaulting defendant Nitro Energy, Inc." and that other claims were reduced to " . . . a nominal level by the defendants' acknowledgement [SIC] of the oil and

---

4. The trial court's September 2, 2006 order states as follows:

### FINAL JUDGMENT ORDER

This matter came before the Court on the 22nd day of August, 2006, on Motion by Plaintiffs William L. Groves and Harrolyn B. Groves for entry of Default Judgment against Nitro Energy, Inc. Having reviewed the Motion setting forth all requirements in accordance with West Virginia Rule of Civil Procedure 55, the entry of this Court's previous Order of Judgment as to Liability, the entire record in this case, pertinent legal authorities, and the testimony adduced at the hearing held this day, the Court holds as follows:

The record indicates that the Complaint in the above-captioned matter was filed in this Court and that a Summons and Complaint were duly served upon Defendant Nitro Energy, Inc. No answer or other defense or pleading has been filed by Defendant Nitro Energy, Inc., and the defendant has failed to appear, plead, or otherwise defend in this action in the time permitted by law. The Court expressly determines that there is no just reason for delay of final judgment in accordance with West Virginia Rule of Civil Procedure 54, and that, on balance, consideration of the Parsons factors supports entry of Default Judgment.

Defendant Nitro energy, Inc., has not requested a jury, and Plaintiffs expressly waive a jury as to Defendant Nitro Energy, Inc., for purposes of Default Judgment. Plaintiffs have requested judgment for the sum of $1,291,000, post-judgment interest at 10% per annum in accordance with West Virginia Code § 56–5–3, plus costs expended.

### Ruling

For the above mentioned reasons, the Court hereby GRANTS Plaintiffs' Motion for Default Judgment against Nitro Energy, Inc.

It is hereby ORDERED that Default Judgment be entered against Nitro Energy, Inc., in this matter.

It is additionally ADJUDGED and ORDERED that Plaintiffs' Motion for Default Judgment be and is hereby GRANTED. Further, it is ADJUDGED and ORDERED that Plaintiffs William L. Groves and Harrolyn B. Groves do recover of and from Defendant Nitro Energy, Inc., the sum of $704,000 with post-judgment interest at the rate of 10% per annum from the date of judgment until paid and costs expended.

. . .

gas lease that was quitclaimed[5] or assigned to Plaintiffs by original Defendant Westside Exploration, LLC."

On November 27, 2006, Nitro filed a motion to set aside the September 2, 2006, $704,000.00 default judgment. On December 13, 2006, the trial court conducted a hearing on the motion; the judge orally denied the motion.

On December 14, 2006, one day after denying Nitro's motion to set aside default judgment, the trial court entered an order granting summary judgment to defendants Roy G. Hildreth & Son, Inc., Roy G. Hildreth, Jr. and GMH Gas Co. on the remaining issues between the plaintiffs and these defendants. In the order the trial court confirmed ownership of the oil and gas underlying the real estate in dispute to be in GMH, not the Groves. The trial court specifically found that "[t]here is no evidence shown or suggested by which plaintiffs [Groves] could prove any rights in the subject oil and gas interests."

On February 20, 2007, the trial court entered a written order confirming the December 13, 2006, oral decision denying Nitro's motion to set aside default judgment. It is from this order that Nitro appeals.

## II.

■ We review default judgments under an abuse of discretion standard. In Syllabus Point 3 of *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970) [*overruled on other grounds by Cales v. Wills,* 212 W.Va. 232, 569 S.E.2d 479 (2002) ], this Court said:

A motion to vacate a default judgment is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.

The Court further discussed this standard in Syllabus Point 3 of *Hinerman v. Levin,* 172 W.Va. 777, 310 S.E.2d 843 (1983):

Appellate review of the propriety of a default judgment focuses on the issue of whether the trial court abused its discretion in entering the default judgment.

*In accord,* Syllabus Point 1, *Cales v. Wills,* 212 W.Va. 232, 569 S.E.2d 479 (2002).

■ Furthermore, this Court specified the burden of proof in setting aside a default judgment as:

On an appeal to this Court the appellant bears the burden of showing that there was error in the proceeding below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court.

Syllabus Point 2, *Perdue v. Coiner,* 156 W.Va. 467, 194 S.E.2d 657 (1973).

With these principles in mind we consider this case.

The appellant Nitro Energy, Inc. makes four assignments of error claiming an abuse of discretion by the trial court by: (1) denying Nitro's motion to set aside default judgment, (2) rendering a default judgment in an amount that "Was Speculative, Premature, Erroneous, Arbitrary and Capricious," (3) failing to make findings of fact and conclusions of law upon which it based its default judgment rulings, and (4) allowing a manifest injustice for the award of $704,000.00 for the conversion of minerals which the trial court found with respect to other defendants were not owned by the plaintiffs.

■ We review this case in light of *West Virginia Rules of Civil Procedure,* Rules 55 and 60 and *Parsons v. Consolidated Gas Supply Corporation,* 163 W.Va. 464, 256 S.E.2d 758 (1979). In *Parsons* we held in Syllabus Point 3 that:

In determining whether a default judgment should be entered in the face of a Rule 6(b) motion or vacated upon a Rule 60(b) motion, the trial court should consider: (1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the

---

**5.** The "SURRENDER AND RELEASE OF OIL AND GAS LEASES" dated October 21, 2005, contained the following language: "... and forever quitclaims any and all rights...."

degree of intransigence on the part of the defaulting party.

We also said in *Parsons* that "there is the necessity to show some excusable or unavoidable cause to explain the delay in answering." 163 W.Va. at 471, 256 S.E.2d at 762.

■ In 2006, this Court elaborated on the *Parsons* factors and stated in Syllabus Point 4 and 5 of *Hardwood Group v. LaRocco*, 219 W.Va. 56, 631 S.E.2d 614 (2006):

4. When addressing a motion to set aside an entry of default, a trial court must determine whether "good cause" under Rule 55(c) of the West Virginia Rules of Civil Procedure has been met. In analyzing "good cause" for purposes of motions to set aside a default, the trial court should consider: (1) the degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; (4) the degree of intransigence on the part of the defaulting party; and (5) the reason for the defaulting party's failure to timely file an answer.

5. In addressing a motion to set aside a default judgment, "good cause" requires not only considering the factors set out in Syllabus Point 3 of *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 256 S.E.2d 758 (1979), but also requires a showing that a ground set out under Rule 60(b) of the West Virginia Rules of Civil Procedure has been satisfied.[6]

Applying these principles, we analyze the instant case with respect to the *Parsons* and *Hardwood* factors.

■ 1. *The degree of prejudice:* The initial inquiry under *Parsons* requires a determination of the degree of prejudice to the non-defaulting party if the default judgment is vacated. In the instant case the non-defaulting party is the Groves. The Groves argue, in part, that they should not have to try their case against Nitro on the merits because Nitro's default constitutes an admission of " . . . the allegations contained in 'Appellees' [Groves] Complaint and Amended/Supplemental Complaint as a matter of law." The Groves also argue, in part, that they are prejudiced by their voluntary dismissal of other defendants with respect to some claims, particularly the conversion claim, because those dismissals were urged by the Groves in consideration of the fact that the trial court previously granted default judgment against Nitro.

Nitro, on the other hand, argues that the Groves could not be prejudiced by reversing the default judgment because the Groves admitted in their complaint that Nitro never extracted minerals from the subject realty. Furthermore, Nitro argues that the Groves would not be prejudiced by reversing the default judgment because Roy G. Hildreth & Son, Inc., Roy G. Hildreth, Jr., and GMH were the primary defendants who would ultimately be responsible to the Groves if their claims of ownership in the minerals were valid.

■ When discussing the *West Virginia Rules of Civil Procedure* this Court often refers to, but does not consider binding, interpretations of the Federal Rules. *See* Footnote 6 of *Hardwood, supra.* Federal courts have ruled that prejudice occurs when circumstances have changed since the entry of the default judgment which impairs the plaintiff's ability to prosecute its claim. On the other hand, federal courts have said that

. . . the fact that the plaintiff would have to try the case on the merits if relief is granted is not the kind of prejudice that should preclude relief. Similarly, the fact that reopening the judgment would delay

---

**6.** *West Virginia Rules of Civil Procedure*, Rule 60(b) states the following grounds: (b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*— . . . (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. . . .

plaintiff's possible recovery has not, in itself, been deemed to bar relief.

10A *Fed. Prac. & Proc.* § 2699 (Civ.3d.1998). Also, the fact that a party may be required to undergo the expense of preparing and conducting a trial on the merits is an insufficient basis for denying relief from default. Furthermore, we believe the authority granted West Virginia trial courts under Rule 60(b) when granting relief from a default judgment to impose "... such terms as are just ..." provides courts with the power to minimize the effect upon the non-defaulting party when ordering relief from default judgments. We find these principles consistent with our jurisprudence and applicable to the instant case.

In this case much of the Groves' complaint against Nitro is based on public records. We find nothing in the record to indicate that circumstances have changed since the entry of the default judgment which would impair the plaintiffs' ability to prosecute its claim on the merits. After consideration of the briefs, arguments, and a review of the record, we find nothing to indicate that the Groves would be prejudiced by vacation of the default judgment against Nitro. We therefore find that no such prejudice exists.

▇ *2. The presence of material issues of fact and meritorious defenses:* In examining this factor we need only to determine whether "... there is ... reason to believe that a result different from the one obtained would have followed from a full trial." *Hinerman v. Levin*, 172 W.Va. 777, 783–84, 310 S.E.2d 843, 850 (1983).

Nitro argues that the trial court's favorable ruling on the motion for summary judgment filed by Roy G. Hildreth & Son, Inc., Roy G. Hildreth, Jr. and GMH supports Nitro's claim of the presence of material issues of fact and meritorious defense. The trial court found, in part, that the Groves' claim to the minerals at issue in this case were not supported by the evidence in the record or by any theory of law.[7] Nitro further cites to the deed granting the Groves their real estate which expressly reserves all minerals underlying the Groves' land as evidence of a meritorious defense. Finally, Nitro argues that no fact exists which *supports* the validity of Groves' complaint against Nitro.

This Court makes no findings with respect to the Groves' rights to the minerals at issue in this case. Still, upon consideration of the briefs, argument of counsel, and our review of the record, we believe that Nitro has satisfied this aspect of the second *Parsons* analysis.

*3. The significance of the interests at stake:* The default judgment was in the amount of $704,000.00. We consider a judgment in this amount to be significant; therefore, the third factor *of Parsons* is satisfied.

*4. The degree of intransigence by the defaulting party:* Under *Parsons* "fourth factor, we examine the degree of intransigence by Nitro in failing to respond to the complaint." "In *Parsons v. Consolidated Gas Supply Corporation*, 163 W.Va. 464, 256 S.E.2d 758, 763 (1979) this court noted that any evidence of intransigence on the part of a defaulting party should be weighed heavily against him in determining the propriety of a default judgment." *Hinerman, supra,* 172 W.Va. at 782, 310 S.E.2d at 849.

The record in this case shows that the complaint against Nitro was filed on September 1, 2005. The Groves' certificate of service indicates that the complaint was served on Nitro on that same date "through the

---

**7.** The trial court order entered December 14, 2006, that granted summary judgment to defendants Roy G. Hildreth & Son, Inc., Roy G. Hildreth, Jr. and GMH Gas Co. on remaining issues between the Groves and these defendants contains, in part, the following findings of fact and conclusions of law:

    2. By virtue of said provision of said deed [Groves' deed], plaintiffs received no part of the oil or gas or other minerals within and underlying the land described in said deed.

    . . .

**8.** There is nothing in the deed to plaintiffs, or in the deeds to plaintiffs' mediate or immediate predecessors to the surface, to show that plaintiffs were conveyed any minerals or that at the time of any of said conveyances the parties thereto or any of them expected or thought that any of them, including plaintiffs, were receiving any minerals.

    . . .

**15.** There is no evidence shown or suggested by which plaintiffs could prove any rights in the subject oil and gas interests.

West Virginia Secretary of State Process Division." There is nothing in the record to suggest that Nitro did not have actual notice of the filing of the original suit.

The Groves' motion for default judgment was filed on October 17, 2005. The certificate of service attached to the motion for default judgment indicates that Nitro Energy, Inc. was served on October 17, 2005, with a copy of the motion by "First Class Mail to Nitro Energy, Inc. 859 Foxboro Rd. Saginaw, MI 48603." Again, there is nothing in the record to suggest that Nitro did not have actual notice of the motion.

On January 3, 2006, the Groves filed a notice of hearing on their motion for default judgment. The notice specified a hearing to be held on January 26, 2006. The certificate of service attached to the notice of hearing indicates that Nitro Energy, Inc. was served with a copy of the notice by mail at the same address as was the motion for default judgment. Again, there is nothing in the record to suggest that Nitro did not have actual notice of the notice of hearing. However, the record does not indicate that a hearing on the motion for default judgment was conducted on January 26, 2006, as suggested by the notice.

On January 31, 2006, the Groves filed a memorandum in support of their motion for default judgment. In this instance the certificate of service attached to the memorandum indicates that the memorandum was served on other defendants in the case, but the certificate of service does not indicate service on Nitro.

On March 26, 2006, approximately six months after the filing of the initial complaint, the trial court entered an order granting the Groves' motion for default judgment[8] against Nitro *as to liability,* but deferred the issue of damages.

On July 27, 2006, the Groves filed a notice "for hearing the determination of damages as to Nitro Energy, Inc., a defendant in default." The certificate of service attached to the notice indicates service on all defendants *except* Nitro. A hearing was conducted on

August 22, 2006, and on September 2, 2006, the trial court entered an order awarding *default judgment* against Nitro in the amount of $704,000.00. The record indicates that Nitro did not attend the hearing.

Nitro argues, in part, that its failure to answer was based upon a good faith belief that its interests were being protected by an attorney acting on behalf of another party, Westside Exploration, LLC, in the case. On the other hand, the Groves argue that since Nitro did not appear in the case until November 27, 2006, in excess of fourteen months after the filing of the initial complaint, Nitro's intransigence should be considered significant. We agree with the Groves' position in this regard, and therefore we find Nitro's intransigence to be significant in Groves' favor under *Parsons'* fourth factor.

5. Under *Parsons* and *Hardwood,* we consider a fifth factor. A defaulting party must show *excusable neglect,* or that at least one of the grounds included in Rule 60(b) of the *West Virginia Rules of Civil Procedure* has been satisfied. In this case we believe there are potentially two grounds, Rule 60(b)(1) and Rule 60(b)(6), applicable to this case. Rule 60(b)(1) requires showing of "Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause." Rule 60(b)(6) requires a showing of "any other reason justifying relief from the operation of the judgment."

In support of its argument that good cause has been shown under Rule 60(b)(1), Nitro relies upon an affidavit executed by William Boss, a principal of Westside Exploration, LLC, a defendant in the instant case, which indicates that he contacted an attorney and "instructed him to answer the suit on behalf of both Westside [Exploration, LLC] and Nitro." The affidavit also indicates that the attorney contacted William Boss and indicated that "we needed to assign the oil and gas lease to the Groves to be clear of the litigation, which Westside did." The Groves, on the other hand, submitted an affidavit from the same attorney which disclaimed the assertions in the affidavit submitted by Nitro.

---

8. Although the trial court used the language of "default judgment," it would have been more properly referred to as "default." The *default judgment,* with damages, followed at a later date.

Furthermore, the trial court held a hearing on the motion to set aside the default judgment on December 13, 2006, and refused to find that Nitro met the requirement of Rule 60(b)(1).

The scant record before us sheds little light upon the this issue. While there is some merit in Nitro's assertions, the record is somewhat confusing and contradictory. Therefore, we find that Nitro has failed to carry its burden of satisfying Rule 60(b)(1) as required as an aspect of *Parsons* and *Harwood.*

Next we examine the applicability of Rule 60(b)(6), a "catch-all" ground in granting relief in default judgment proceedings. While courts have discretion with respect to the entry of defaults and default judgments, historically "... most courts traditionally disfavor the entry of a default judgment." 10 *Moore's Federal Practice* § 55.02 (3 Ed.2008) *See also Parsons,* 163 W.Va. at 471, 256 S.E.2d at 762 ("In determining the discretion issue, we have established as a basic policy that cases should be decided on their merits, and consequently default judgments are not favored and a liberal construction should be accorded a Rule 60(b) motion to vacate a default order.").

A discussion on the sufficiency of the pleadings with respect to entry of defaults and default judgments is found in 10 *Moore's Federal Practice* § 55.32[1][b] (3 Ed.2008):

> Although a defaulting party admits the factual basis of the claims asserted against it, the defaulting party does not admit the legal sufficiency of those claims. The claimant must state a legally valid claim for relief, and the defaulting party may challenge the claimant's pleadings for failure to do so. A court may grant judgment by default only for relief that may lawfully be granted on the *well-pleaded facts* alleged by the claimant.

(Emphasis added.) This principle has long been recognized in our jurisprudence where our United States Supreme Court stated "... the matter of the bill [complaint] ought at least to be opened and explained to the court when the decree is applied for, so that the court may see that the decree is a proper one." *See Thomson v. Wooster,* 114 U.S.104, 113–114, 5 S.Ct. 788, 793, 29 L.Ed. 105 (1885). This principle is compatible with West Virginia jurisprudence relating to default judgments.

The initial complaint had as an attachment the deed to the real estate owned by the Groves, and the deed "excepted and reserved ... all of the oil, gas, and other minerals." The language in this deed strongly suggests that the entry of the default and default judgment was improvident. The trial court's ruling on a summary judgment motion for other defendants that concluded that the Groves did not own any of the minerals which they claimed were the object of conversion by Nitro, and other named defendants also suggests that the default judgment was improvident. We, therefore, find nothing in the pleadings or trial court orders to support the basis for granting the default judgment except Nitro's failure to respond to the complaint and the evidence presented as to the value of the underlying minerals. For these reasons we find that Nitro has satisfied the requirement of Rule 60(b)(6).

Furthermore, in weighing the *Parsons* and *Hardwood* factors, we recognize this Court's language in Syllabus Point 2 of *Parsons v. McCoy,* 157 W.Va. 183, 202 S.E.2d 632 (1973) when we said:

> The Rules of Civil Procedure pertaining to the setting aside of default judgments should be liberally construed in order to provide the relief from onerous consequences of default judgments.

That cases should be decided upon their merits, and confirming the principle of the liberal application of Rule 60(b) motions, is also found in *Parsons v. Consolidated Gas Supply Corporation, supra,* 163 W.Va. at 471, 256 S.E.2d at 762. In this case we believe that the record does not support a finding that undue prejudice would result against the Groves by setting aside the default judgment. The appellant has defenses which may have merit, and that the interests at stake are significant. However, these findings must be weighed against Nitro's intransigence, which we find was significant. Although we find that Nitro is unable to satisfactorily explain its intransigence under

Rule 60(b)(1), we believe that Nitro has provided sufficient reasons to satisfy Rule 60(b)(6).

Therefore, we believe that the good-cause requirement is satisfied under Rule 60(b)(6), and when considered with our findings relating to the lack of prejudice, the existence of a meritorious defense, and significance of interest, reversal is justified.

### III.

Based on the foregoing, we find that the circuit court abused its discretion in denying Nitro Energy, Inc.'s motion to set aside default judgment. We therefore reverse the ruling of the trial court. Furthermore, under the terms of Rule 60(b), "On motion and *upon such terms as are just,* the court may relieve a party … from a final judgment …," we hold that upon retrial of this matter on the merits, Nitro shall be prohibited from using trial court rulings on summary judgment motions as to other defendants as collateral estoppel against the Groves' claim against Nitro. (Emphasis added.)

For the foregoing reasons, we reverse the February 20, 2006, order of the trial court and remand the case for further proceedings *not inconsistent with this opinion.*

Reversed and Remanded.